(C.D. 2474)

A. N. DERINGER, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 9, 1964)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Andrew P. Vance* and *Charles P. Deem*, trial attorneys), for the defendant.

Before Donlon and Richardson, Judges

Donlon, Judge: The protest, as originally filed, gives notice of dissatisfaction with assessment of duties on entered merchandise "at 30% or other rate or rates on cigarette tubes * * *, or other merchandise covered by" the entry of the protest. Duty of 19 percent was claimed, under paragraph 1552.

On plaintiff's motion on trial, the protest was amended to add the following assortment of claims:

10% under Par. 1558; or 1½¢ per lb. and 5%; or 1 cent per lb. and 3¼%; or 2½¢ per lb. and 8½%, or 2¢ per lb. and 6½%; or 3¢ per lb. and 10%; or 2½¢ per lb. and 7½% as tissue paper or similar paper under Par. 1404; or 4½¢ per lb. and 10%; or 2½¢ per lb. and 10% as uncoated paper under Par. 1405; or 17½% under Par. 1413.

Plaintiff does not argue for any of the protest claims which it caused to be added by this amendment. The only claim which plaintiff prosecutes is the claim for classification that was made in the original protest, namely, as cigarette paper, under paragraph 1552, at the modified rate of 19 percent, which is the rate provided by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T.D. 54108).

Plaintiff stated on trial, and repeats in its brief, that it does not waive any of its protest claims. However, in citing the "statute involved" in its brief, plaintiff cites only modified paragraph 1552, *supra*. The provision under which duties were assessed is also paragraph 1552, but a different modification, namely, that effected by the General Agreement on Tariffs and Trade (T.D. 51802).

Defendant has, quite properly, confined its exposition and arguments to the claim to which plaintiff, on trial and in its brief, has limited the presentation of its case. Notwithstanding plaintiff's disclaimer of waiver of the several other claims, those claims that are not prosecuted are dismissed for failure to prosecute. We proceed to a review of the record and briefs on the claim which plaintiff has prosecuted.

There is in evidence a representative sample of the imported merchandise. (Exhibit 1.) It is a paper tube that consists of what are described as three component materials, identified as cigarette paper, cork tipping paper, and filter material. Mr. Arnold Kastner, of Montreal, so described the papers. Testifying for plaintiff, Mr. Kastner said that he has been with Dominion Cigarette Tube Co., Ltd., of Montreal, since 1958, and is one of the directors. The business of that company is manufacturing cigarette paper tubes. Prior to 1958, and since 1934, he was with "Central Tobacco," which he said has been manufacturing cigarettes and tobacco since 1938. His work has been in production.

There was also introduced into evidence a device or machine (exhibit 2), which a smoker uses to inject tobacco into paper tubes such as those represented by exhibit 1. The manner in which the device is operated was described by Mr. Kastner. Some other devices used for the same purposes are represented by exhibits 3 and 4.

Exhibit 5 illustrates the kind of paper that Mr. Kastner's company uses in making the tube of exhibit 1.

The material in the filter of exhibit 1 is also paper, and that paper is illustrated by exhibit 6. However, the weight of paper used in making filters seems to have changed. Exhibit 6 is representative of the filter paper the manufacturer is using today, Mr. Kastner said.

Paper which simulates cork is the material at the tip of the cigarette tube. It is not actually cork paper. The paper from which this tip is made is illustrated by exhibit 7.

The process of manufacturing the paper cigarette tubes was described by Mr. Kastner. Exhibit 8 is illustrative of the cigarette paper in tube form, before the filter material is injected. In that form, the tubes are unfinished, and they are not exported in that form.

Although Mr. Kastner said that he is not a paper expert, he testified that the papers (exhibits 5, 6, and 7) are uncoated "except possibly for the typing which is a printed process which I don't know." He does not know about the simulated cork paper.

On cross-examination, Mr. Kastner admitted that one could not make a "plain" cigarette tube out of exhibit 6; nor a "practical" cigarette tube out of exhibit 7; but he said that one could make a plain cigarette tube out of exhibit 5.

While Mr. Kastner "thought" the tubes could be used for chocolate cigarettes, he never has seen tubes so used.

Mr. Kastner's testimony and the enumerated exhibits constitute the record before us. On that record, plaintiff argues that the imported merchandise (exhibit 1) falls within the common meaning of the tariff provision for "cigarette paper in all forms."

The competing tariff provisions are as follows:

Paragraph 1552, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T.D. 54108):

Cigarette books, cigarette-book covers, and cigarette paper in all forms except cork paper_____ 19% ad val.

Paragraph 1552, as modified by the General Agreement on Tariffs and Trade (T.D. 51802):

All smokers' articles whatsoever (except cigar and cigarette boxes * * *),[1] and parts thereof, finished or unfinished, not specially provided for, of whatever material composed, except china, porcelain, parian, bisque, earthenware, or stoneware:

\* \* \* \* \* \* \*

Other_____ 30% ad val.

Defendant contends that the imported articles are something more, or other, than cigarette paper; that they do not fall within the common meaning of that tariff term; and that they are more correctly described as smokers' articles which are not otherwise specially provided for in the act.

The issue before us, as defined by both parties, revolves around the common meaning of "cigarette paper," and whether these articles have been shown to be a form of cigarette paper within that common meaning. Neither party argues for a commercial meaning other or different from the common meaning.

Both parties, in their briefs, refer to the abstract decision in *Bernard, Judae & Co.* v. *United States*, 53 Treas. Dec. 932, Abstract 5489. The collector classified the merchandise of that case under paragraph 1454, Tariff Act of 1922, predecessor of paragraph 1552 of the Tariff Act of 1930, under which plaintiff claims in this suit. The opinion states the decision as follows:

The sample consists of a small paper tube about the size of an ordinary cigarette and is gold colored at one end. The testimony showed that it is cigarette paper but is sold to chocolate manufacturers. On the whole it was held to support the view that the merchandise was properly classified under the provision for "cigarette paper in all forms" at 60 per cent under paragraph 1454. [P. 932.]

It is defendant's view that "the correctness of the decision in that case is certainly arguable on the ground that the provision for cigarette paper does not include something manufactured from cigarette paper; but even assuming that the decision was correct," defendant argues that it is readily distinguishable from the case at bar. (Defendant's brief, p. 8.) The distinction defendant argues is that the "more complex" tube here has filter material and a paper tip that

---

[1] Omitted matter relates only to composition and value of cigar and cigarette boxes.

simulates cork, whereas the tube in the *Bernard, Judae & Co.* case was made wholly of cigarette paper, gold colored at one end.

Plaintiff cites *Smillie & Co.* v. *United States*, 12 Ct. Cust. Appls. 365, T.D. 40520, quoting selected language from the opinion. In the *Smillie* case, the decision turned on proof of commercial designation, and that is not the issue here. We are dealing with common meaning, the common meaning of the tariff term "cigarette paper in all forms except cork paper." If that accurately describes the instant merchandise, it will prevail over the more general not-specially-provided-for classification as a smoker's article. If it is not within the enumeration of "cigarette paper in all forms except cork paper," plaintiff will not have overcome the presumption that the collector's classification is correct.

As plaintiff points out, it is the rule that a descriptive enumeration (e.g., cigarette paper) will prevail over a use provision (e.g., smokers' articles) which is qualified by a not-specially-provided-for clause. *United States* v. *Lansen-Naeve Corp.*, 44 CCPA 31, C.A.D. 632.

If these tubes were made wholly of the kind of paper of which the tube proper consists, we would follow the rule in *Bernard, Judae & Co., supra,* and hold that they are a form of cigarette paper. Unlike the facts there, this paper tube intended to hold tobacco that is to be smoked as a cigarette, a stronger case for such classification. Does the addition of the *paper* filter element and of the *paper* tip simulating cork, change the classification? We think it does not.

The paper used as the wrapper is cigarette paper, in tube form. The papers used as the filter and as the simulated cork tip are, to be sure, not such papers as would be used for the wrapper of a cigarette. One could not, or at least would not, make an entire cigarette tube solely out of them. (R. 18.)

Whether king-size cigarettes and filter-tip cigarettes were known to commerce in 1930, the record does not show. This fact, either way, is not decisive of the case, in our opinion. The proofs here show that all three types of paper that went into the instant tubes, are papers used to make tubes which, in turn, are used for making cigarettes. Such cigarette paper was described in the Summary of Tariff Information (1929), which was before Congress when the Tariff Act of 1930 was enacted. "Cigarette paper is made in flat sheets for conversion into books, and also in rolls or bobbins $1\frac{3}{16}$ inches in width for use on cigarette-making machines." (P. 2146.)

The paragraph 1552 exception, as to cork paper, is not applicable here, and defendant does not argue that it is. The record shows that none of the three papers used was a cork paper. One was paper that *simulated* cork.

However, the tariff exclusion of cork paper is a guide to statutory construction. Congress used language to embrace cigarette paper

*in all forms* save one. That one is cork paper. We should not strain to write in another exception that Congress did not state. *Expressio unius est exclusio alterius.* In our view, "all forms" include all papers used to hold tobacco to be smoked as cigarette, save only cork paper, which is specifically excepted.

The legislative history of the provision we are construing throws light on congressional intention and confirms our interpretation.

The provision for "cigarette paper in all forms, except cork paper" was new in the Tariff Act of 1913. Paragraph 475 of the Tariff Act of 1909 had provided for "cigarette paper in all forms," without any exception. Paragraph 429 of the Tariff Act of 1909, enumerating cork articles, had no specification for cork paper. The 1913 bill, as introduced, made no mention of cork paper in either paragraph.

In the hearings before the Committee on Ways and Means of the House of Representatives, on the tariff schedules proposed for enactment in the Tariff Act of 1913, there was a discussion of "cork paper that is used for cigarette tips," and it was said that this is the only use of cork paper. Tariff Hearings, Committee on Ways and Means, House of Representatives, 62d Congress, 3d session, document 1447 at page 5175.

As enacted, both paragraphs of the bill were revised, so that cork paper was enumerated in paragraph 340 of the Tariff Act of 1913 as one of the dutiable cork articles; and cork paper was specifically excepted in paragraph 381 from the enumeration for cigarette paper in all forms.

It appears that Congress was persuaded that cork paper was a form of cigarette paper and, hence, would be dutiable under the provision for cigarette paper in all forms; and that, intending to make it dutiable elsewhere, language to reflect that intention was written into the bill.

The protest claim for classification under modified paragraph 1552, as cigarette paper, is sustained. All other protest claims are dismissed. Judgment will be entered accordingly.